Kevin Karty vs. Mid-America Energy, Inc., & others.[1]

No. 07-P-585.

Middlesex. January 14, 2008. - April 10, 2009.

Present: Perretta, Lenk, & Sikora, JJ.

*Practice, Civil,* Motion to dismiss, Choice of forum. *Contract,* Choice of forum clause. *Fraud.*

In a civil action arising from a subscription agreement entered into between a Massachusetts investor (plaintiff) and a Nevada corporation, the trial court judge correctly dismissed the complaint on the basis of a forum-selection clause contained in the agreement, which required that the parties resolve any disputes arising thereunder in Kentucky, where the plaintiff's complaint, which claimed fraud in the inducement as to the entire subscription agreement, failed to allege or set out any facts concerning the specific question whether the forum-selection clause was obtained by fraud. [28-30]

Civil action commenced in the Superior Court Department on July 26, 2006.

A motion to dismiss was heard by *Bonnie H. MacLeod-Mancuso,* J.

*Daniel E. Pogoda* for the plaintiff.

Perretta, J. This appeal by Kevin Karty raises the question whether the judge correctly dismissed Karty's complaint against Mid-America Energy, Inc. (Mid-America), and Clinton C. Goff on the basis of the forum-selection clause set out in his, Karty's, subscription agreement with Mid-America, which required that the parties resolve any disputes arising thereunder in Kentucky. A Superior Court judge ruled that the clause was enforceable

[1]Gary M. Milby; Clinton C. Goff; Scotty Cooke; Melissa Chapman; Eagle Oil #5, LLP; and John Melton. Due to the failure to effect timely service of process, the complaint was dismissed as to Milby, Cooke, Chapman, Eagle Oil #5, LLP, and John Melton. The remaining defendants, Mid-America Energy, Inc. (Mid-America), and Goff, did not file a brief on appeal.

and allowed Mid-America's motion to dismiss. See Mass.R.Civ.P. 12(b)(3), 365 Mass. 755 (1974). Karty's argument on appeal is that because he was fraudulently induced to enter into the subscription agreement, the forum-selection clause should not be enforced. Since Karty's amended complaint fails to contain any allegation that the forum-selection clause was obtained by fraud, we affirm the judgment.

1. *The applicable standard of review.* Although the motion to dismiss was based upon a claim of improper venue and brought pursuant to Mass.R.Civ.P. 12(b)(3), 365 Mass. 754 (1974), the judge properly treated the motion as one brought under rule 12(b)(6), 365 Mass. 755 (1974). See *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 789-790 (2005), cert. denied, 546 U.S. 1173 (2006) (motion to dismiss based on forum-selection clause properly treated under rule 12[b][6]). In reviewing a rule 12(b)(6) dismissal of an action, we accept as true the allegations in the complaint as well as any inferences reasonably drawn therefrom in the plaintiff's favor. Otherwise put, a motion to dismiss brought under rule 12(b)(6) is to be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). See *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 282 (2007).[2]

2. *The alleged facts.* We recite the facts as set out in Karty's amended complaint as well as the pertinent provisions of the subscription agreement attached to the defendants' motion to dismiss.[3]

---

[2]The standard for the dismissal of a complaint pursuant to rule 12(b)(6) was modified in *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 635-636 (2008). As therein stated, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true." *Id.* at 636, quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007). Application of the standard enunciated in *Iannacchino* would not change the result we reach in the instant case.

[3]The fact that the judge considered the subscription agreement in ruling upon the defendants' motion to dismiss did not convert the motion to dismiss into a motion seeking summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). See *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 45 n.4 (2004) (where plaintiff alleging securities fraud had notice of offering memorandum and subscription agreement and alleged reliance upon them in framing complaint, attachment of such documents to motion to dismiss did not

Karty is a resident of Massachusetts and Mid-America is a Nevada corporation. In November, 2005, Karty submitted information to an Internet Web site seeking information about investment opportunities. Mid-America responded and sent Karty a prospectus and other materials concerning its sale of interests in a limited liability partnership organized to drill and to operate oil wells in Kentucky.

In its prospectus, as well as in subsequent oral and electronic mail communications, Mid-America or its employees and agents represented the nature of an investment by Karty as one that guaranteed three oil producing wells and assured him that if those wells did not produce oil, Mid-America would drill new wells at its own expense. Mid-America also made representations to Karty relating its history of success in oil drilling ventures, the strength of its financial condition, the amount of income Karty could expect as a result of any investment he might make, and the time frame within which he would receive his first payment of income.

On or about December 17, 2005, Karty executed a subscription agreement with Mid-America for the purchase of one unit of a limited liability partnership known as Eagle Oil #5, LLP (Eagle). In that agreement, Karty represented that he was an "accredited investor."[4] However, the success of that venture did not live up to Mid-America's representations.

Initial reports that Eagle had struck oil were followed by continuing reports of production delays accompanied by assurances that such issues would promptly be resolved, that production would "ramp [up] shortly." By the summer of 2006, drilling efforts had failed to yield an oil producing well. Moreover, Karty discovered that Mid-America had misrepresented certain information related to the cause of production delays, avoided or delayed disclosure of information calling into question the viability of Eagle's wells, and grossly overstated the success and profitability of Mid-America's other drilling projects while, at

---

convert that motion to one for summary judgment). See also *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 892 (1983); 11 Moore's Federal Practice par. 56.30[4] (3d ed. 2008).

[4]As set out in Black's Law Dictionary 846 (8th ed. 2004), an "accredited investor" is "[a]n investor treated under the Securities Act of 1933 as being knowledgeable and sophisticated about financial matters, esp[ecially] because of the investor's large net worth."

the same time, soliciting his investment of additional funds in Eagle or in one of its other drilling projects.

In July, 2006, Karty brought the present action in which he alleged fraud in the inducement of the subscription agreement.[5] More specifically, Karty alleged that Mid-America had fraudulently induced his investment by misrepresenting its financial conditions, its history of success in oil drilling ventures, and Eagle's profit potential

Section 1.N(1) of the subscription agreement signed by Karty reads:

> "I understand and accept that all provisions of this Agreement are made in Warren County, Kentucky, and that exclusive venue and jurisdiction for all matters in dispute shall also be in Warren County, Commonwealth of Kentucky. All disputes and breaches hereunder shall be submitted to binding arbitration pursuant to the rules of the American Arbitration Association then pertaining in Bowling Green, Kentucky."

3. *Discussion.*[6] While sitting in admiralty in *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the United States Supreme Court considered the enforceability of a forum-selection clause contained in an international towage agreement. There the Court departed from the historic disfavor of such clauses and held that such a clause contained in a "freely negotiated private international agreement," *id.* at 12, is "prima facie valid," *id.* at 10, and should be enforced unless the party seeking to avoid the clause demonstrates that enforcement of the

---

[5]Karty's complaint, as amended, also set out claims of breach of contract, conversion, fraud, negligent and intentional misrepresentation, and violations of G. L. c. 93A.

[6]Karty does not address the question whether Massachusetts or Kentucky law controls our determination of the enforceability of the forum-selection clause. The judge concluded that the courts of both jurisdictions "apply a substantially similar standard" in determining the enforceability of such clauses and relied on Massachusetts authorities in allowing the dismissal of Karty's action. Because Karty does not argue this question on appeal, we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Moreover, it appears from the record before us that Karty relied upon Massachusetts and Federal authorities in the Superior Court. See *TAL Financial Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 431 (2006), regarding the doctrine of the "law of the case."

clause would be "unreasonable and unjust," *id.* at 15, that the agreement was "unaffected by fraud, undue influence, or overweening bargaining power," *id.* at 12, or that enforcement would "contravene a strong public policy of the forum in which suit is brought." *Id.* at 15. In *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974), the Court emphasized that *The Bremen* was not to be read

> "[to] mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the [forum-selection] clause [in a contract] is unenforceable. Rather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion" (emphasis in original).

It was observed in *Haynsworth* v. *The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997), cert. denied, 523 U.S. 1072 (1998), that Federal courts "have not hesitated to apply [*The Bremen's*] enforceability standards in non-admiralty cases." When faced with the question of the enforceability of a forum-selection clause, Federal courts consistently have held that general allegations of fraud in the inducement of a contract are an insufficient basis for declining to enforce the clause, and that a party seeking to avoid a forum-selection clause on grounds of fraud must show that inclusion of that clause in the contract was the result of fraud. See, e.g., *Haynsworth* v. *The Corp.*, *supra* at 963 (fraud and overreaching must be specific to a forum-selection clause to invalidate it; allegations of fraud as to the contract as a whole or as to portions other than the forum-selection clause are insufficient; claims of fraud or overreaching must be aimed straight at the forum-selection clause to succeed). See also *Marano Enterprises of Kansas* v. *Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001); *Lipcon* v. *Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296-1297 (11th Cir. 1998), cert. denied, 525 U.S. 1093 (1999); *Afram Carriers, Inc.* v. *Moeykens*, 145 F.3d 298, 301-302 (5th Cir. 1998), cert. denied sub nom. *de Penta* v. *Afram Carriers, Inc.*, 525 U.S. 1141 (1999); *Richards* v. *Lloyd's of London*, 135 F.3d 1289, 1296-1297 (9th Cir.), cert. denied, 525 U.S. 943 (1998); *Riley* v. *Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir.), cert. denied, 506 U.S. 1021 (1992); *Moses*

v. *Business Card Exp., Inc.*, 929 F.2d 1131, 1138 (6th Cir.), cert. denied, 502 U.S. 821 (1991).

Karty has not provided us with any Massachusetts precedent or authority that squarely addresses the question whether general allegations of fraud in the inducement of a contract constitute a sufficient basis for declining the enforcement of a forum-selection clause. There is, however, language in Supreme Judicial Court decisions that indicates that the "fraud" exception to the enforceability of forum-selection clauses is more limited than Karty contends and that Massachusetts is in accord with Federal authority.

In *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 574-575 (1995), the court adopted the view expressed in Restatement (Second) of Conflict of Laws § 80 (1988 revision) ("The parties' agreement as to the place of the action will be given effect unless it is unfair or unreasonable"). In so doing, the court made particular reference to § 80, comment c, which provides that a court will decline to enforce a forum-selection clause "if it finds that *the provision was obtained* by fraud, duress, the abuse of economic power or other unconscionable means" (emphasis supplied). *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, *supra* at 575 n.5, quoting from Restatement (Second) of Conflict of Laws § 80 comment c (1971 & rev. 1989). See *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*, 433 Mass. 122, 130 & n.8 (2000), wherein a forum-selection clause was upheld absent any showing that enforcement of that clause would be unfair or unreasonable while also noting that the party resisting enforcement of the clause had failed to allege that it had been obtained by fraud, duress, or the abuse of economic power or other unconscionable means.

4. *Conclusion.* It follows from all that we have said that because the allegations set out in Karty's complaint and amended complaint speak only to fraud in the inducement as to the entire subscription agreement and fail to allege or set out any facts concerning the specific question whether the forum-selection clause was obtained by fraud, we see no error in the dismissal of his complaint.

*Judgment affirmed.*