BABY FURNITURE WAREHOUSE STORE, INC. *vs.* MEUBLES D&F LTÉE.

No. 08-P-646.

Suffolk. February 26, 2009. - August 21, 2009.

Present: KATZMANN, RUBIN, & FECTEAU, JJ.

*Contract,* Construction of contract, Choice of forum clause, Choice of law clause. *Practice, Civil,* Motion to dismiss, Choice of forum. *Res Judicata.*

In an action brought by a dealer (plaintiff) against a manufacturer and wholesaler (defendant), alleging, inter alia, fraudulent misrepresentation and violation of G. L. c. 93A, the judge did not err in granting the defendant's motion to dismiss, which was based on the ground that a choice of law and forum selection clause contained in an authorized dealer policy (policy) between the parties provided for the litigation of all claims in Canada, where the language of the clause demonstrated that it was not limited solely to claims arising from the policy [30]; where there was no merit to the plaintiff's claim that the clause applied only to contract claims and not to the tortious behavior of one of the parties [30-32]; and where enforcement of the forum selection clause was fair and reasonable, given that the plaintiff had already had its day in court through prior litigation in the required forum [32-33].

Principles of claim preclusion applied to bar an action brought in Superior Court by a dealer (plaintiff) against a manufacturer and wholesaler (defendant), alleging, inter alia, fraudulent misrepresentation and violation of G. L. c. 93A, where the claims were based on the same series of transactions as those brought by the plaintiff in a prior Canadian action [33-34], and where the plaintiff lacked neither incentive [34-35] nor opportunity [35-37] to bring the same operative claims in the prior Canadian suit.

CIVIL ACTION commenced in the Superior Court Department on September 26, 2007.

A motion to dismiss was heard by *John C. Cratsley,* J.

*John Hause* for the plaintiff.

*Joseph Lange* for the defendant.

KATZMANN, J. We deal here with the application and interpretation of a choice of law and forum selection clause. On August 17, 2006, Meubles D&F Ltée (Meubles), brought an action

against Baby Furniture Warehouse Store, Inc. (BFW), in the Superior Court of the Province of Quebec, Canada (Canadian action), demanding $149,830.11 for goods sold and delivered to BFW, but not paid for by BFW. BFW moved to dismiss for forum non conveniens. Following a hearing, this motion was denied by the Canadian court.

On December 18, 2006, BFW filed its "Defence and Cross-Demand" in the Canadian action. On August 8, 2007, Meubles moved to dismiss BFW's defence and cross-demand. This motion was allowed on August 24, 2007. Final judgment in the Canadian action was entered in favor of Meubles on November 1, 2007.

Meanwhile, on September 26, 2007, BFW filed the present action against Meubles in Superior Court (Massachusetts action). In response, on November 16, 2007, Meubles filed a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(3) and (6), 365 Mass. 754 (1974). Meubles's motion to dismiss was granted on February 14, 2008. BFW now appeals the judgment of the Superior Court. We affirm.

*Background.*[1] Meubles is a Canadian company specializing in the manufacture and wholesale of children's furniture under the trade names Ragazzi Furniture and Bambino Reale. BFW is a Massachusetts corporation in the business of selling baby and children's products, including furniture manufactured and sold by Meubles. Prior to this action, BFW had purchased furniture produced by Meubles for over fourteen years.

On November 15, 2002, BFW and Meubles entered into the "D & F Furniture/d.b.a Ragazzi Furniture Authorized Dealer Policy" (policy). The policy contained a choice of law and forum selection clause, which read:

> "Any dispute arising out of or concerning this Policy statement shall be governed by the laws of the province of Quebec; and the Authorized Dealer and Ragazzi agree to submit themselves to the jurisdiction of the provincial

---

[1] Where the present matter is before this court on a motion to dismiss, we accept the relevant facts alleged in the complaint, "as well as such inferences as may be drawn therefrom in the plaintiff's favor, . . . as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977).

courts sitting in the province of Quebec for resolution of any disputes arising out of or related to this Policy or the relationship between the Authorized Dealer and Ragazzi Furniture."

After agreeing to the policy, BFW continued to purchase furniture from Meubles under both the Ragazzi and Bambino trade names. In the Canadian action, Meubles claimed that BFW owed $149,830.11 for goods purchased and received.[2]

*Discussion.* A. *Standard of review.* "The interpretation of an unambiguous written contract constitutes a ruling of law that is subject to plenary review on appeal." *President & Fellows of Harvard College* v. *PECO Energy Co.*, 57 Mass. App. Ct. 888, 891 (2003). Therefore, this court will review this case de novo.[3]

Massachusetts, in keeping with Federal practice, has recently articulated a new guiding principle for evaluating motions to dismiss under Mass.R.Civ.P. 12(b). See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008). "The modified Federal rule is that, to survive a motion to dismiss, a complaint must contain factual allegations 'enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true.' " *Flomenbaum* v. *Commonwealth*, 451

---

[2]BFW claimed to have placed stop payments on the checks issued to Meubles based on the damaged condition of the products received and the unavailability of matching pieces for purchase.

[3]Even if Meubles's motion to dismiss were treated as one for summary judgment, the standard of review would be the same. Here, the judge could very well have treated Meubles's rule 12(b) motion as a motion for summary judgment. See *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 789-790 (2005) (reliance on affidavit should have converted dismissal motion into one for summary judgment). Accord *Shaw* v. *Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (court may consider documents referenced in plaintiff's complaint without converting motion to dismiss into motion for summary judgment). Meubles, in its dismissal motion, introduced evidence from the Canadian action as well as the policy. This additional evidence should constitute matters outside the pleadings. Accordingly, we also review this matter as a motion for summary judgment. *Casavant, supra* at 790.

Summary judgment is appropriate if, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), quoting from Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974). An appeal based on a summary judgment motion is subject to de novo review by this court. *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997).

Mass. 740, 751 n.12 (2008), quoting from *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007).[4]

B. *Forum selection clause.* Meubles moved for dismissal "on the grounds that the parties agreed to litigate all matters relating to the contract between the parties in the courts of the Province of Quebec." BFW argues on appeal that the forum selection clause contained in the policy is inapplicable to the current dispute mainly because (1) the clause is limited exclusively to policy claims and (2) the clause applies to contract claims only.

1. *Policy claims.* BFW maintains that "[the policy] did not bind [it] to resolving any and all disputes between the parties exclusively in the Quebec courts." However, this argument is contrary to the plain language of the policy. See *Larabee* v. *Potvin Lumber Co.*, 390 Mass. 636, 641 (1983), quoting from *Sherman* v. *Employers' Liab. Assurance Corp.*, 343 Mass. 354, 356 (1961) ("[w]hen . . . the words [of a contract] are plain and free from ambiguity they must be construed in their usual and ordinary sense"). BFW asserts that "[n]owhere in the Policy are there any provisions for the handling of disputes arising from allegations of fraudulent misrepresentations by Ragazzi or for the return of non-defective merchandise, which is not market-able because Ragazzi cannot furnish matching or compatible components for the merchandise." However, these claims would fall squarely within the literal language of the forum selection clause, which governs "any disputes arising out of or related to this Policy or the relationship between the Authorized Dealer and Ragazzi Furniture." This language demonstrates that the forum selection clause was designed to cover any and all claims between Meubles and its authorized dealers, and was in no way limited to policy claims only.

2. *Contract claims.* BFW next argues that the policy's forum selection clause applies only to contract claims. BFW contends that counts IV (fraud) and V (G. L. c. 93A) are torts, and there-fore, are outside the scope of the forum selection clause. The case law cited by BFW does little to bolster its position. For example, *Stagecoach Transp., Inc.* v. *Shuttle, Inc.*, 50 Mass. App. Ct. 812 (2001), is readily distinguishable. First, at issue in that case was a choice of law provision, not a forum selection

---

[4]This is a stricter standard, effectively raising the bar for plaintiffs trying to survive a motion to dismiss. See *Flomenbaum, supra* at 751.

clause as found in the present case. *Id.* at 817. The *Stagecoach* agreement read:

> "This Agreement shall be governed and interpreted in ac-cordance with the laws of the State of New York. Without limiting in any way the jurisdiction of the courts of any state, nation or province, or [the defendant's] right to invoke the jurisdiction of such courts, [the plaintiff] hereby submits and consents to the jurisdiction of the courts of the United States of America and the State of New York . . . ."

*Ibid.* Accordingly, the court held, "In our case, the agreement does not limit enforcement actions to the New York courts." *Id.* at 818 n.7. In contrast, here, the policy provides that the courts of Quebec have *exclusive* jurisdiction over any disputes between the parties. Unlike *Stagecoach*, where the parties agreed to jurisdiction in both New York State court as well as Federal court, the policy here mandated that all disputes be resolved in the courts of Quebec.

Second, contrary to BFW's assertion, Massachusetts does not apply a presumption that "unless so specified . . . forum selec-tion provisions ordinarily apply only to contract claims arising from the agreement and not to the tortious behavior of one of the parties." While this language may be characterized as con-sistent with that used by the *Stagecoach* court, BFW fails to acknowledge its context in that case. There, the court was inter-preting the scope of a choice of law provision under New York law. See *id.* at 818. Even assuming that the presumption does ap-ply in the present case, the language used in the policy's forum selection clause is sufficiently broad to overcome that presumption. Meubles's clause was not limited to disputes arising under the agreement.[5] Rather, it is clear that the alleged torts in the present

---

[5]*Northeast Data Sys., Inc.* v. *McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607 (1st Cir. 1993), is equally distinguishable. It too deals exclusively with a choice of law provision. *Id.* at 609. In *Northeast*, the plaintiff originally alleged breach of contract, but later amended its complaint to add G. L. c. 93A claims. *Id.* at 608. There, the choice of law provision at issue was more narrow than the one in the present case; it was limited only to the contract. The United States Court of Appeals for the First Circuit held that "(with one exception) Northeast's 93A claims amount[ed] to embroidered 'breach of contract' claims," which were governed by the contractual choice of law

case stem from BFW's "relationship" with Meubles and are therefore covered by the broad policy language.[6]

BFW alleges that "Meubles knowingly encouraged [BFW] to purchase its products on false pretenses, knowing that it would not be able to service lifetime guarantees or supply [BFW] with accessories and matching furniture as it had done in the past." However, this alleged fraudulent action does not relate to BFW's acceptance of the policy, which contains the forum selection clause, but rather to purchases made pursuant to the policy. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 379 (1990) (c. 93A claim is merely an alternative recovery theory under contract as it arises from breach of warranty claim); *Karty* v. *Mid-America Energy, Inc.*, 74 Mass. App. Ct. 25, 29-30 (2009) ("party seeking to avoid a forum-selection clause on grounds of fraud must show that the inclusion of that clause in the contract was the result of fraud"). Accordingly, the forum selection clause applies to counts IV and V as those counts arise from the relationship between BFW and Meubles.[7]

3. *Fairness of enforcing forum selection clause.* Forum selection clauses shall be enforced when it is fair and reasonable to do so. *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 574-575 (1995); *Stagecoach Transp.*, 50 Mass. App. Ct. at 817-818. "[F]or a court to conclude that enforcement of a forum selection clause in a freely negotiated international commercial transaction is unfair or unreasonable, the party who seeks to escape the consequences of the clause must show that 'trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.' " *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*, 433 Mass. 122, 130 (2000), quoting from *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972). Additional factors to con-

provision. *Id.* at 609. The exception carved out by the United States Court of Appeals for the First Circuit was for fraudulent inducements to contract. *Id.* at 611. Contrary to BFW's argument, there is no such inducement here.

[6]That conclusion is buttressed by the fact that BFW's counterclaims in the Canadian action sounded in misrepresentation.

[7]BFW also contends that the policy was ambiguous in that the forum selection clause applied only to its dealings with Ragazzi, and not with Bambino. We need not address this argument as the Canadian court concluded that the "doing business as" designation does not limit the policy to the Ragazzi line only. See also res judicata analysis, *infra.*

sider are whether "(a) [a defendant] will plead statutes of limitations in [the forum State] as to claims that were not barred [in a nonforum State] when [the] action was commenced or (b) [the forum State] will not entertain [the] actions." *Jacobson, supra* at 579.

BFW is unable to make the requisite showing to avoid enforcement of the forum selection clause. This is not a scenario where this court is forced to speculate as to what would occur if the forum selection clause is enforced. Instead, we have the benefit of hindsight, as the Canadian action has already been adjudicated. Enforcement of the forum selection clause will not deprive BFW of its day in court. BFW has already had its day in court through prior litigation in the required forum.

C. *Res judicata.* Meubles argues that even if the forum selection clause is inapplicable to the current litigation, BFW's claims are barred by res judicata resulting from the Canadian action. BFW counters that res judicata does not apply because BFW had no incentive to bring its claims in Canada and the Canadian court lacked jurisdiction over its G. L. c. 93A claim.

Res judicata is a generic term encompassing both claim and issue preclusion. *Heacock* v. *Heacock*, 402 Mass. 21, 23 n.2 (1988). Here, we deal with claim preclusion. "The doctrine of res judicata is founded on the necessity for finality in litigation." *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974). "Considerations of fairness and the requirements of efficient judicial administration dictate that an opposing party in a particular action as well as the court is entitled to be free from continuing attempts to relitigate the same claim." *Ibid.*

1. *Application of claim preclusion.* There are three required elements for the invocation of claim preclusion: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Kobrin* v. *Board of Registration in Med.*, 444 Mass. 837, 843 (2005), quoting from *DaLuz* v. *Department of Correction*, 434 Mass. 40, 45 (2001). As the movant, Meubles bears the burden of establishing all three elements. See *Longval* v. *Commissioner of Correction*, 448 Mass. 412, 416-417 (2007).

There is no dispute as to the first and third elements here. The parties in the present case are identical to those in the

Canadian action. BFW's cross-demand was dismissed by the Canadian court, and final judgment in the Canadian action was entered against BFW, satisfying the third element. "With respect to the second element, claim preclusion will apply even though a party is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies." *Charlette* v. *Charlette Bros. Foundry, Inc.*, 59 Mass. App. Ct. 34, 44 (2003). Res judicata applies to claims that derive from the "same transaction or series of connected transactions." *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 399 (1991).

A comparison of the Massachusetts complaint and BFW's cross-demand in the Canadian action demonstrates that the claims are based on the same series of transactions. All claims stem from BFW's purchase of "2006 Close-Out Furniture." Thus, BFW cannot plausibly argue that the 2006 purchases do not constitute a convenient trial unit, nor that the claims are unrelated in origin. BFW merely purports to maintain a different theory of liability, which is not enough to take its claims out of the realm of claim preclusion. See *Iannacchino*, 451 Mass. at 634-635 ("An implied warranty claim and a c. 93A claim are based on the same economic theory of injury and the same set of alleged facts, they should survive or fail under the same analysis").

2. *BFW's incentive and opportunity to bring current claims in the Canadian action.* Claim preclusion does not apply where the party lacked the incentive or opportunity to bring the claim in the prior suit. *Longval, supra* at 417. BFW contends that neither was present in the Canadian action.

a. *Incentive.* In arguing that it lacked incentive to bring its current claims in the Canadian action, BFW relies on the *Longval* case. There, the Supreme Judicial Court stated, "[t]he doctrine only operates, however, to bar further litigation of 'all matters that were or should have been adjudicated in the [original class] action.'" *Ibid.*, quoting from *Heacock*, 402 Mass. at 24. BFW contends that the use of the word "should" by the *Longval* court indicates that claim preclusion only applies to compulsory counterclaims. However, BFW ignores another line of Massachusetts cases that substitutes "could" for "should" in the applicable standard. See generally *O'Neill* v. *City Manager of Cambridge*,

428 Mass. 257, 259 (1998). A closer examination of the *Heacock* and *Longval* cases demonstrates that the words "could" and "should" are interchangeable, thereby vitiating BFW's argument that Massachusetts requires a compulsory counterclaim before applying claim preclusion. Additionally, both *Longval* and *Heacock* demonstrate that the Supreme Judicial Court applies claim preclusion only where the plaintiff could have brought the claims at issue in a prior litigation.[8] Incentive aside, BFW did bring the same operative claims in the Canadian action. Therefore, claim preclusion applies.

b. *Opportunity.* We now turn to the question of whether BFW could have brought its current G. L. c. 93A claim in the Canadian action.[9] BFW argues it could not bring the c. 93A claim, and, as a result, claim preclusion should not apply. We disagree.

In advancing its argument, BFW relies on a string of cases where res judicata was denied. However, these cases are unavailing. While dealing with arbitration agreements and proceedings, the cases are relevant to the present scenario but they do not warrant the result BFW seeks. For example, BFW argues, based on *Abdella* v. *United States Fid. & Guar. Co.*, 47 Mass. App. Ct. 148, 152 (1999), that a Canadian court would lack jurisdiction over BFW's c. 93A claim. BFW correctly states that the *Abdella* court denied dismissal based on res judicata because "[t]he arbitrator was not empowered to determine issues related to Abdella's G. L. c. 93A claims." However, BFW fails to

---

[8]However, even if these cases articulate two differing standards, it is unnecessary for this court to decide which one governs, as dismissal in this case is appropriate under either standard. Under the *Heacock* standard, BFW should have brought all of its claims in the Canadian action due to the risk of claim preclusion. See *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 452 (1982), quoting from Restatement (Second) of Judgments § 25, Reporter's Note 228 (1982) ("In cases of doubt, it is appropriate for the rules of res judicata to compel the plaintiff to bring forward his state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit"). In addition, the forum selection clause, discussed *supra*, mandated that all claims between BFW and Meubles be resolved in a Canadian court. Therefore, the current claims should have been litigated in the Canadian action.

[9]BFW does not dispute that it could have brought its other contract claims in the Canadian action. BFW argues lack of jurisdiction over the c. 93A claim only. Accordingly, our analysis is limited to jurisdiction over BFW's c. 93A claim.

acknowledge that if the arbitrator in the *Abdella* case had been so empowered, res judicata would have applied to the c. 93A claim. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 667 (2002) ("A broad arbitration clause, such as the one seen here, includes statutory claims under G. L. c. 93A, § 11").[10] As discussed *infra*, the Canadian court did not lack such power.

Here, contrary to BFW's contention, the policy demonstrates that the parties' intent was that any and all claims between them would be resolved in a Canadian court. This would include c. 93A claims as well. Thus, BFW had the opportunity to bring these claims in the Canadian action.

Additionally, BFW seemingly acknowledges that its c. 93A claim could be viewed as a permissive counterclaim under Canadian law. Article 172 of the Code of Civil Procedure of Quebec (1972) provides:

> "The defendant may plead by defence any ground of law or fact which shows that the conclusions of the demand cannot be granted in whole or part. He may also in the same proceeding constitute himself cross-plaintiff in order to urge against the plaintiff any claim arising from the same source as the principal demand, or from a related source. The court remains seized of the cross demand notwithstanding discontinuance of the principal demand."

The plain language of art. 172 allowed BFW to bring all of its claims against Meubles in the Canadian action. Notwithstanding art. 172, BFW maintains that the Canadian court lacked jurisdiction over a State statutory claim. This is incorrect, as BFW has

---

[10]Similarly, *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1 (1999), is equally unavailing. There, summary judgment for the defendant, based on res judicata, was reversed as to the plaintiff's c. 93A claim, because "[t]here [was] nothing in the record before [the court] to suggest that the parties intended to litigate the c. 93A claims in the arbitration proceedings, or that the arbitrator was asked to consider or decide such claims." *Id.* at 13. However, *TLT* is factually quite different from the present case. Two factors not present here warranted the denial of res judicata. First, *TLT* involved a party not present in the original arbitration. *Id.* at 3. Second, the party to the arbitration was a municipality, and it was unclear whether municipalities were proper defendants in a c. 93A claim. *Id.* at 13 n.10. Consequently, the defendant could not establish that the c. 93A claims at issue could have been litigated in the prior arbitration.

failed to account for additional Canadian law. Under art. 2809 of the Civil Code of Quebec (2002),

> "Judicial notice may be taken of the law of other provinces or territories of Canada and of that of a foreign state, provided it has been pleaded. The court may also require that proof be made of such law; this may be done, among other means, by expert testimony or by the production of a certificate drawn up by a jurisconsult. Where such law has not been pleaded or its content has not been established, the court applies the law in force in Quebec."

Therefore, had BFW pleaded the c. 93A claim in its cross-demand, the Canadian court could have exercised jurisdiction. This court should only apply an exception to res judicata if it is clear that the Canadian court would decline jurisdiction. See *Anderson*, 387 Mass. at 451-452. Based on the record before us, no such certainty is possible. "The rule of res judicata is designed to forestall a plaintiff from getting 'two bites at the apple.' " *Id.* at 452. BFW is attempting to do just that here. Consequently, claim preclusion applies to all of BFW's claims enumerated in the Massachusetts complaint.

*Conclusion.* For the foregoing reasons, dismissal is affirmed.

*So ordered.*