Curran, Dennis J., J.
This lawsuit arises from Howard Forman’s former employment as an accountant with Forman, Itzkowitz, Berenson & LaGreca, P.C. and his subsequent employment with Tankel, Rosenberg & Co., P.C. LaGreca[1] asserts, inter alia, that Mr. Foiman’s employment with Tankel violates the non-competition clause included in an employment agreement with his former firm executed some 27 years ago, in 1986. Mr. Forman responds that he retired in 1999 at the age of 65, and now, fourteen years later at the age of 79, he would like to do some part-time accountancy work with Tankel. LaGreca opposes that prospect.
Before this Court are the parties’ cross motions for summary judgment. For the reasons that follow, the defendants’ motion will be allowed in part and denied in part, and LaGreca’s motion will be denied.
BACKGROUND
The following facts are taken from the summary judgment record and the parties’ statement of undisputed material facts.[2] In 1986, Mr. Forman executed an employment agreement with LaGreca, which contained the following pertinent provisions:
13. Termination. [T]his Agreement shall be terminated upon . . . [Mr. Forman] attaining age [65].
16. Confidential Information. [Mr. Forman] shall... hold confidential trade secrets and other confidential information, including, but not limited to, client lists ... Such confidential information shall be kept confidential both during and after the term of this Agreement and this paragraph shall survive the termination of this Agreement.
18. Restrictive covenant. [Mr. Forman] agrees that during the term of this Agreement and for a period of [2-1/2] years after the final termination of this Agreement, [he] shall not engage in ... the practice of public or certified public accounting . . . within a [50] mile radius of [LaGreca’s] office . . .
Mr. Forman also entered into a stock purchase agreement with LaGreca in the same year. Paragraph 3(C) of the stock purchase agreement obligated LaG-reca to redeem any shares Mr. Forman owned in the company “[i]n the event that [his] employment agreement ... is terminated for any reason.”
*454 Mr. Forman continued with LaGreca as a shareholder, director, and employee until 1999. In that year, the employment agreement terminated according to paragraph 13 because Mr. Forman turned sixty-five years old. Upon the termination of the employment agreement, Mr. Forman resigned from all corporate offices he held, and entered into a stock redemption agreement with LaGreca to fulfill the stock purchase agreement’s requirement that the company redeem his shares on the termination of his employment agreement.
LaGreca purchased 150 shares from Mr. Forman in exchange for a payment of $104,373.17. That price was computed according to a formula set forth at paragraph 4(C) of the stock purchase agreement, which determined the value of Mr. Forman’s shares according to the net book value of LaGreca, with modifications to the value of certain accounts receivable. No explicit reference to the company’s good will appears in the formula.
After the termination of the employment agreement, Mr. Forman continued to work as an hourly employee at LaGreca, without owning any stock or holding any corporate office. He continued in that capacity until 2012, when he retired completely from LaGreca. The defendants assert, and LaGreca denies, that Mr. Forman was approached by friends, family, and long-time clients during his service at LaGreca, who asked him to continue to work on their behalf after his full retirement. The defendants assert, and LaGreca denies, that Mr. Forman obtained part-time employment at Tankel to provide these limited services to the clients who had approached him and requested his help. LaGreca asserts, and the defendants deny, that Mr. Forman provided a partial list of LaGreca’s clients to Tankel, in violation of his continuing obligation under the employment agreement to preserve the confidentiality of that information. LaGreca asserts that the terms of Mr. Forman’s employment with Tankel included a 33% commission on any new clients he brought to that firm.
Mr. Forman’s employment agreement with Tankel states that “[for new clients which [Mr. Forman] introduces to [Tankel] and which [Tankel] accepts . . . [it] shall pay [Mr. Forman] compensation . . . equal to . . . [33%] of the [net collections] received from each [new client].” Tankel agreement, ¶4(0). In addition, a list of persons, trusts, and corporations is attached to the Tankel agreement as Schedule A. In its/his complaint, LaGreca describes this list as a list of its clients, which Mr. Forman misappropriated. The defendants describe it as a list of Mr. Forman’s friends, family, and longstanding clients who had approached him and asked that he continue to perform their accounting work.
DISCUSSION
A.Standard
The familiar standard governing motions for summary judgment provides that summary judgment shall be granted forthwith where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Barrows v. Wareham Fire Dist, 82 Mass.App.Ct. 623, 625 (2012), citing Cassesso v. Commisioner of Correction, 390 Mass. 419, 423 (1983). In assessing the record on a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. Terra Nova v. Fray-Wttzer, 449 Mass. 406, 411 (2007).
B.Breach of the Restrictive Covenant
LaGreca brings a claim against Mr. Forman in which it suggests that his employment with Tankel as an accountant within a year of the end of his employment violated the restrictive covenant set forth in paragraph 18 of the employment agreement. However, by its terms, the restrictive covenant expired two and a half years after the termination of the employment agreement. By operation of paragraph 13, the employment agreement terminated in 1999, when Mr. For-man turned sixty-five. Accordingly, the restrictive covenant ended in 2002, about ten years before Mr. Forman obtained employment with Tankel.
LaGreca contends that because the restrictive covenant runs for two and a half years following the “final termination” of the employment agreement, this Court should construe paragraph 18 to restrict Mr. Forman for two and a half years after he ended his employment with LaGreca, which occurred in 2012 However, that result would contravene the plain and unambiguous language of paragraph 18, which explicitly provides that the restrictive covenant is to run for two and a half years from the termination of “this Agreement,” meaning the employment agreement. “[W]hen . . . the words of a contract are plain and free from ambiguity they must be construed in their usual and ordinary sense.” Baby Furniture Warehouse Store, Inc. v. Meu-bles D&FLTEE, 75 Mass.App.Ct. 27, 30 (2009).
Construing the phrase “this Agreement” in its usual and ordinary sense, the parties intended for the restrictive covenant to end in 2002, two and a half years after the termination of the employment agreement in 1999.
C.Disclosure of Confidential Information
LaGreca also alleges that Mr. Forman violated his obligation under paragraph 16 of the employment agreement by providing Tankel with a partial client list that belonged to it. The defendants counter that the only information Mr. Forman provided to Tankel was his recollection of the clients who had come to him to ask him to continue to do work for them.
“While the publicly-available contact information for clients with whom [Mr. Forman] was intimately familiar would seem to escape classification as confidential information,” there is a dispute of material fact as to whether “those clients were . . . the only ones on the list given to ITankel].” B.N.Y. Mellon, N.A. v. Schemer, No. 10-1344-BLS2, 2010 WL 3326965, at *9 (Mass.Super.Ct. May 14, 2010) [27 Mass. L. Rptr. 329]. For this reason, summary judgment is inappropriate on this claim.[3]
*455 D. Violation of Implied Promise Not to Derogate LaGreca’s Good Will
Finally, LaGreca contends that Mr. Forman’s sale of stock to the company according to the stock redemption agreement created an implied promise not to derogate the good will of the company, which he violated by bringing clients to Tankel and away from LaGreca.[4]
“Where the sale of the business includes good will ... a broad noncompetition agreement may be necessary to assure that the buyer receives that which he purchased. Even in the absence of an express covenant not to compete, in such circumstances an agreement by the seller not to depreciate the value of good will may be implied so as to prevent the seller from taking back that which he purported to sell.” Alexander & Alexander, Inc. v. Danahy, 21 Mass.App.Ct. 488, 496-97 (1986), and cases cited. Alternatively, “when the entire assets of a business are sold, there is a presumption that good will passes. And it follows that after a voluntary sale of good will the seller cannot engage in a competing business which will derogate from the sale.” United Tool & Indus. Supply Co. v. Torrisi, 356 Mass. 103, 106 (1969). Mr. Forman rightly argues that the sale of his stock to LaGreca under the stock purchase agreement was not a transfer of an entire business, nor a sale of all of its assets.
However, “the sale by [Mr. Forman] of all the stock held by [him], the relinquishment of any offices in the corporation, and the severance of all connection with it constituted a complete divestment of [his] interest in the corporation and a transfer of that interest to the plaintiff[ ] remaining in the business. It was the equivalent of the sale of ‘all the property and assets’ which [he] had.” Tobin v. Cody, 343 Mass. 716, 720 (1962). Because Mr. Forman “ha[d] been [an] active participant[ ] in the business and [was] in a position to control or affect its good will . . . [he] may validly bind [himself] by an express promise not to derogate from the good will reflected in the value of the stock sold by competing with the buyers remaining in the business, [and] also... such a promise can be implied in the sale of the stock itself.” United Tool & Indus. Supply Co., 356 Mass, at 106-07. The stock redemption agreement created an implied promise not to derogate the good will of the company, which Mr. Forman allegedly violated by bringing clients to Tankel and away from LaGreca.
The defendants argue that the sale of Mr. Forman’s stock was not an arm’s length transaction and assigned no specific value to LaGreca’s good will. The first argument presents a distinction without a difference. Nothing in Massachusetts law requires that a sale of stock be an arm’s length transaction for a negotiated price before a promise will be implied not to derogate good will. As to the second argument, many of the cases that recognize the implied promise not to derogate the good will of a business were based on sales that did not explicitly assign a value to the business’s good will. See, e.g., United Tool & Indus. Supply Co., 356 Mass, at 105; Tobin, 343 Mass, at 720.
ORDER
For these reasons, the defendants’ motion for summary judgment is ALLOWED as to Counts I, II, and III, and Count X to the extent it is based on Mr. Forman’s alleged breach of the employment agreement, but is otherwise DENIED. LaGreca’s motion for summary judgment is, in all respects, DENIED.
Finally, under G.L.c. 231, section 59F, given Mr. Forman’s age, he is entitled to a speedy trial. After conferring with counsel, a trial is scheduled in this matter for eight months hence, that is, on Thursday, June 12, 2014.

For ease of reference, and because the parties characterize Carl LaGreca, C.P.A., principal of the plaintiff accounting firm, as the moving force behind its role in this litigation, Forman, Itzkowitz, Berenson & LaGreca, P.C. will be referred to as “LaGreca.”

Unless otherwise noted, those facts are undisputed.

No the extent Mr. Forman contends that the alleged “client list” is not confidential information according to the criteria set forth in Jet Spray Cooler, Inc. v. Crompton, 361 Mass. 835, 840-41 (1972), there remains a dispute of material fact about the extent to which those criteria apply to the client list.

LaGreca also argues that Mr. Forman was restrained from assuming employment with Tankel, but that argument fails. There was an explicit non-competition clause in the employment agreement that identified a specific time in which Mr. Forman would be restricted from competing with LaG-reca. Mr. Forman complied with those obligations, and thus, it would be incongruous for this Court to impose a longer period of non-competition on the basis of an implied promise not to derogate LaGreca’s good will.