CARL J. GAHN *vs.* TIMOTHY LEARY.

Suffolk.    May 9, 1945. — June 26, 1945.

Present: FIELD, C.J., LUMMUS, QUA, RONAN, & WILKINS, JJ.

*Autopsy.    Medical Examiner.    Dead Body.    Public Officer.    Evidence,*
Judicial notice, Presumptions and burden of proof. *Practice, Civil,*
Ordering verdict.  .

A motion by a defendant that "on the pleadings and the evidence" a
verdict be directed for him presented both the question whether the
allegations in the declaration, if proved, would entitle the plaintiff to
judgment, and the question whether the evidence was sufficient to
support those allegations.

This court took judicial notice of the fact that the defendant in an action
for performing an allegedly illegal autopsy in the county of Suffolk
was medical examiner for that county.

A document, purporting to be issued under G. L. (Ter. Ed.) c. 38, § 6,
as amended, giving a medical examiner authority to perform an
autopsy, must be accepted as true at the trial of an action against
him for performing an allegedly illegal autopsy, where it was put in
evidence as part of the testimony of the defendant, called as a witness
by the plaintiff, and neither its authenticity nor its accuracy was
questioned by the plaintiff.                                  .

No consent by a surviving spouse of a deceased person to the performing
of an autopsy by a medical examiner is required where the examiner
proceeds according to the provisions of G. L. (Ter. Ed.) c. 38, § 6, as
amended.

In the absence of bad faith, a determination by a medical examiner
within his jurisdiction to make an authorized autopsy under G. L.
(Ter. Ed.) c. 38, § 6, as amended, cannot be questioned.

A verdict for the defendant in an action against a medical examiner for
illegally performing an autopsy was properly directed at the close of the
plaintiff's evidence where testimony of the defendant, called as a wit-
ness by the plaintiff, if believed, showed that, in accordance with the
requirements of G. L. (Ter. Ed.) c. 38, § 6, as amended, after procur-
ing written authority from the district attorney, the defendant per-
formed the autopsy in a case which he in good faith considered pre-
sented a question whether the death had resulted from poisoning, and
where, if his testimony were disbelieved in whole or in part, there still
was no evidence warranting a verdict for the plaintiff.

TORT. Writ in the Superior Court dated August 17, 1943.
The case was tried before *Buttrick,* J.   At the close of

the plaintiff's evidence, the judge allowed a motion by the defendant that "on the pleadings and the evidence" a verdict be directed for the defendant.

*M. Rosenthal,* for the plaintiff.

*J. N. Clark,* for the defendant.

WILKINS, J. The plaintiff, who was the husband of Margaret Gahn, deceased, brings an action of tort against a medical examiner for the county of Suffolk for allegedly performing an illegal autopsy on the body of Margaret Gahn. At the conclusion of the evidence the judge, subject to the plaintiff's exception, granted the defendant's motion for a directed verdict. The correctness of this ruling is the sole question presented.

The defendant's motion was based "on the pleadings and the evidence." One effect of the motion was to raise the question whether the allegations in the declaration, if proved, entitled the plaintiff to judgment. *Murphy* v. *Russell,* 202 Mass. 480, 481, and cases cited. *Colby Haberdashers, Inc.* v. *Bradstreet Co.* 267 Mass. 166, 170–171. The motion also had the usual effect of raising the question whether the evidence was sufficient to support the allegations of the declaration.

The declaration alleges, and the only evidence shows, that the autopsy was performed by the defendant on June 19, 1943. We take judicial notice that on that date the defendant was a medical examiner for the county of Suffolk. *Weitzel* v. *Brown,* 224 Mass. 190, 192. *Opinion of the Justices,* 240 Mass. 616, 618. See *International Paper Co.* v. *Commonwealth,* 232 Mass. 7, 15; *Independent-Progressive Party* v. *Secretary of the Commonwealth,* 266 Mass. 18, 21–22. From the testimony of the defendant, who was called as a witness by the plaintiff, it also appears that before proceeding he had obtained from the district attorney of Suffolk County the following document: "Commonwealth of Massachusetts Suffolk, ss. To Timothy Leary, M.D., Medical Examiner: In accordance with Section 6 of Chapter 38 of the General Laws, you are hereby authorized to make an autopsy of the dead body of Margaret Gahn. [Signed] William J. Foley. District Attorney. Boston,

June 19, 1943." The authenticity or the accuracy of the document has not been attacked by the plaintiff in the Superior Court or in this court. It, accordingly, must be accepted as true. *Parsons* v. *New York, New Haven & Hartford Railroad,* 216 Mass. 269, 273. *Dean* v. *Boston Elevated Railway,* 217 Mass. 495, 497–498. *Commonwealth* v. *Kozlowsky,* 238 Mass. 379, 384–385. *Meteor Products Co. Inc.* v. *Société d'Electro-Chemie et d'Electro-Métallurgie,* 263 Mass. 543, 547–548. *Crean* v. *Boston Elevated Railway,* 292 Mass. 226, 228. *LeBlanc* v. *Cutler Co.* 305 Mass. 283, 285. *Duff* v. *Webster,* 315 Mass. 102, 103.

The provisions of G. L. (Ter. Ed.) c. 38, § 6, as amended, are in part: "Medical examiners shall make examination upon the view of the dead bodies of only such persons as are supposed to have died by violence. If a medical examiner has notice that there is within his county the body of such a person, he shall forthwith go to the place where the body lies and take charge of the same; and if, on view thereof and personal inquiry into the cause and manner of death, he considers a further examination necessary, he shall, upon written authorization of the district attorney, mayor or selectmen of the district, city or town where the body lies, make an autopsy in the presence of two or more discreet persons, whose attendance he may compel by subpoena. . . . Before making such autopsy he may call the attention of the witnesses to the appearance and position of the body. He shall then and there carefully record every fact and circumstance tending to show the condition of the body and the cause and manner of death, with the names and addresses of said witnesses, which record he shall subscribe."

The proceedings thus prescribed in the case of dead bodies begin with a mandatory view by the medical examiner but only of the bodies of such "persons as are supposed to have died by violence." This means "supposed" by anyone within the "notice" of the medical examiner, the legislative intent clearly being to ensure a view in every doubtful case. It would not be a supposition by the medical examiner himself except where he might happen to know of such a death.

Death "by violence" comprehends death from other than natural causes, including poisoning. *N. W. Commercial Travellers' Association* v. *London Guarantee & Accident Co.* 10 Manitoba, 537, 550. This is especially clear from the provision in G. L. (Ter. Ed.) c. 38, § 6, as amended: "The medical examiner may, if he considers it necessary, employ a chemist to aid in the examination of the body or of substances supposed to have caused or contributed to the death." If, after the view and "personal inquiry into the cause and manner of death," the medical examiner "considers a further examination necessary," he shall, upon written authorization of the district attorney, or of other designated officials, make an autopsy. Stated another way, if his considered judgment is that an autopsy is necessary for the ascertainment of the manner and cause of death, he is obliged to make one, subject to obtaining the requisite authorization. This conclusion is manifest from the following section of the statute: "He shall forthwith file with the district attorney for his district a report of each autopsy and view and of his personal inquiries, with a certificate that, in his judgment, the manner and cause of death could not be ascertained by view and inquiry and that an autopsy was necessary." G. L. (Ter. Ed.) c. 38, § 7, as amended. The provisions as to notification and for subsequent proceedings by way of inquest where required are not now material. See G. L. (Ter. Ed.) c. 38, §§ 7, 8, as amended.

The declaration was in two counts for the same cause of action. The first count alleged that "the defendant without authority and against the wishes of the plaintiff, but in violation and in disregard thereof, and trespassing upon the rights of the plaintiff as custodian of the body . . . did upon the deceased body of said wife, make . . . a surgical operation or dissection." As a general rule, the surviving spouse is properly the plaintiff in this kind of action. *Larson* v. *Chase,* 47 Minn. 307, 309. *Streipe* v. *Liberty Mutual Life Ins. Co.* 243 Ky. 15, 17–18. *Thompson* v. *Pierce,* 95 Neb. 692, 693. *Simpkins* v. *Lumbermens Mutual Casualty Co.* 200 S. C. 228, 237. See *Durell* v. *Hayward,* 9 Gray, 248;

*Burney* v. *Children's Hospital,* 169 Mass. 57; *Vaughan* v. *Vaughan,* 294 Mass. 164, 166. As was said in *Sheehan* v. *Commercial Travelers Mutual Accident Association,* 283 Mass. 543, 553, "The right of possession of a dead body for the purpose of burial or other lawful disposition and, consequently, for the purpose of an autopsy, subject to some limitations in the public interest, is vested, at least in the absence of a different provision by the deceased, in the surviving husband, wife or next of kin." One of the limitations in the public interest is the making of an autopsy by a medical examiner under G. L. (Ter. Ed.) c. 38, § 6, as amended. In such circumstances, no consent is required of the surviving spouse, whose rights are subordinate to paramount public interests. See *Kingsley* v. *Forsyth,* 192 Minn. 468, 470; *Sturgeon* v. *Crosby Mortuary, Inc.* 140 Neb. 82, 91–92. The plaintiff, therefore, could not recover on the first count.

The second count substantially repeated the allegations of the first count and contained the additional allegations that the defendant "having no reason to suppose that death came by violence" acted "without authority as required by law, but in violation and in disregard thereof."

We are of the opinion that the plaintiff was not entitled to go to the jury on the second count. While the oral testimony, which came entirely from witnesses called by the plaintiff, could be disbelieved by the jury, except when a party testified against his own interest, such disbelief would not take the place of affirmative proof. *Tallon* v. *Spellman,* 302 Mass. 179, 183. *Borysewicz* v. *Dineen,* 302 Mass. 461, 464. *O'Brien* v. *Harvard Restaurant & Liquor Co. Inc.* 310 Mass. 491, 493. *Perry* v. *Hanover,* 314 Mass. 167, 170. "Every reasonable supposition is indulged in favor of the honesty of purpose of . . . public officers and the legality of their conduct." *Slack* v. *Inspector of Buildings of Wellesley,* 262 Mass. 404, 407, and cases cited. "Public officers are presumed to act lawfully." *Comerford* v. *Meier,* 302 Mass. 398, 403, and cases cited. In the absence of bad faith the determination of the medical examiner within his jurisdiction to make an authorized autopsy cannot be

questioned. *Burke* v. *Metropolitan District Commission,* 262 Mass. 70, 75. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40, 47.

There was no testimony from which it could be found that the defendant did not act in good faith. The plaintiff testified that on June 8, 1943, Margaret Gahn, who had been ill for about three weeks, was taken to the Boston City Hospital, where she died on June 19. Joe Lorusso testified that he was the father of Margaret Gahn and that following her death he had a conversation with the defendant, who said, "All the time you people drink wine, and she got inside some alcohol, the liver, and that is what the trouble is." The only other witness was the defendant, who testified as follows: He was a physician and a medical examiner for Suffolk County. The case was referred to him "because the hospital was doubtful about what the situation was." This was on June 19 at 8:30 A.M. Margaret Gahn had died at 3:35 A.M., and the hospital sent the body to the Northern Mortuary, accompanied by a memorandum for the medical examiner which briefly summarized the hospital record regarding diagnoses, symptoms, past history, physical findings, laboratory findings, progress, and special examinations. The clinical diagnoses contained in the memorandum were acute polyneuritis; cirrhosis of liver; broncho-pneumonia of unknown etiology, possible miliary tuberculosis; and probable intrauterine pregnancy at four months. The defendant requested permission of the district attorney to perform an autopsy, which was granted on that date in the form hereinbefore set forth. As a result of the autopsy he found the causes of death were acute general miliary tuberculosis, fatty liver, and alcoholism. There was no cirrhosis of the liver, broncho-pneumonia, or intrauterine pregnancy. The abstract of the hospital record showed that she had suffered from peripheral neuritis with wrist drop, which indicated the possibility of alcoholic, lead, bismuth, or arsenic poisoning. It was part of his duty to view the body, but he was unable to determine from the view alone whether there was poisoning, and in his opinion it was necessary to perform an autopsy to determine that, and in

so doing he exercised good faith and judgment. When the case was first brought to his attention, he did not have the benefit of the hospital record. The admitting diagnosis was rheumatoid arthritis. This did not indicate that "the patient had any violence." The next hospital diagnosis was peripheral neuritis, and questionable intrauterine pregnancy pelvic and rheumatic fever. Another hospital diagnosis was polyneuritis. A later hospital diagnosis was polyneuritis, alcoholic cirrhosis, chronic alcoholism, dental caries, and questionable pulmonary bronchitis. The hospital diagnosis at death was alcoholic polyneuritis, alcoholic cirrhosis, chronic alcoholism, and questionable miliary tuberculosis and virus pneumonia. The service at the hospital gave him something different for a diagnosis from the diagnosis on the hospital record. His office was in one of the buildings at the hospital. The records at the hospital are usually not available to him. The doctor's records would be there, but he has supplied in good faith the record given by the service of that death on the morning of June 19, and he says it was different. The death was so mysterious that the various diagnoses at the hospital were different. He performed the autopsy for the purpose of finding out from a medical standpoint why this woman died. It was performed to straighten it out not from a scientific point of view, but from a medical legal point of view. It was not performed merely to find out what hospital diagnoses were correct. The hospital record disclosed symptoms which could be an awakening of lead poisoning: the wrist drop and the foot drop. He was dealing with a mysterious death in a young woman, and it was his duty to make sure that nothing got by which was mysterious or related to a criminal responsibility, and from that viewpoint he investigated the case. He disproved a considerable part of the diagnosis. In the hospital diagnoses there were suggestions of violence in that there were several unexplained conditions. Peripheral neuritis may be an indication of poisoning. It was the result of poisoning, probably alcohol. That was violence such as he would report to the district attorney. It was responsibility within the criminal

sphere, and was a possibility in this case. In the death certificate the defendant gave as causes of death acute general miliary tuberculosis, fatty liver, and alcoholism. There was nothing in the death certificate indicating death by violence apart from the alcoholism, which is a death by violence according to the health department. Peripheral neuritis was not a primary or secondary cause of death, but it contributed to the disease which caused the death. Of and by itself it fairly should be ruled out as an effective cause. It played a part in the progress of the acute miliary tuberculosis and in relation to the alcoholic liver, but was too remote to put on the death certificate. It was the reason he requested permission to perform the autopsy. He expected to find on the record that it played a primary part in the death.

What we have said disposes of the plaintiff's contentions that the jury could find for the plaintiff by accepting or rejecting portions of the defendant's testimony. They would not have been warranted in finding that, because there was in truth no poisoning or violence, there was nothing in any record or on the view of the body which would entitle the defendant to perform the autopsy. If the defendant's testimony were rejected in whole or in part, there would still be no evidence that his action was in bad faith.

*Exceptions overruled.*