CATHLEEN MACRELLI & another[1] *vs.* CHILDREN'S HOSPITAL & others.[2]

Suffolk. May 5, 2008. - June 20, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Dead Body. Negligence,* Doctor, Emotional distress. *Emotional Distress. Practice, Civil,* Motion in limine, Instructions to jury.

In a civil action brought against a hospital and its doctors, who retained the organs of the plaintiffs' eighteen month old son following an autopsy, the judge properly denied the plaintiffs' pretrial motion in limine that sought a determination that G. L. c. 38, § 4, did not authorize the Office of the Chief Medical Examiner to retain organs after the autopsy without the plaintiffs' consent, where the question whether the retention of organs was reasonably necessary and appropriate in order to achieve the statutory objectives in this case created a question of fact for the jury to decide after hearing the admission of evidence regarding autopsy procedure in general and the specific facts of the case [695]; further, the judge properly instructed the jury that the statute permitted the chief medical examiner or his or her designee to do anything that was reasonably medically necessary to determine the cause of death [696].

In a civil action for negligence brought by the parents of an eighteen month old deceased child against a hospital and its doctors, evidence that the cause of the child's death was still undetermined supported the jury's determination that none of the defendants was negligent in conducting an autopsy and retaining the child's organs. [696-697]

CIVIL ACTION commenced in the Superior Court Department on August 30, 1999.

The case was tried before *Paul E. Troy,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Samuel M. Pollack (Sean Higgins* with him) for the plaintiffs.

*William J. Dailey, Jr. (Harry A. Pierce* with him) for the defendants.

The following submitted briefs for amici curiae:

[1] Donald Macrelli.

[2] Hannah Kinney, Antonio R. Perez-Atayde, and Tina Haliotis.

*Martha Coakley*, Attorney General, *& Rosemary Connolly*, Assistant Attorney General, for the Commonwealth & others.

*John J. Barter* for Professional Liability Foundation.

*Jeffrey M. Jentzen & Denise McNally* for National Association of Medical Examiners.

Cowin, J. After the sudden death of an eighteen month old boy, doctors at Children's Hospital (Children's) performed an autopsy at the request of the office of the chief medical examiner (OCME) pursuant to G. L. c. 38, §§ 3 and 4. The hospital returned the child's body to his parents, the plaintiffs, but, unbeknownst to them, retained his organs. When the plaintiffs learned that the organs had been retained, they commenced this action in Superior Court against the hospital and the doctors. The plaintiffs claimed that the retention of the organs exceeded the OCME's authority and sought damages.[3] A jury found in favor of the defendants. The plaintiffs timely appealed, and we transferred the case here on our own motion. We affirm the judgment.[4]

*Statutory framework.* The governing statute in this case is G. L. c. 38, entitled "Medical Examiners and Inquests." General Laws c. 38, § 2, explains that the office of the chief medical examiner is within the Executive Office of Public Safety and is charged with conducting "medicolegal" investigations to determine the cause of death in certain situations. The office is headed by the chief medical examiner, who appoints district or area medical examiners or designates other qualified individuals to conduct medicolegal investigations within their jurisdiction.

General Laws c. 38, § 3, provides that "any person having

---

[3]The plaintiffs' amended complaint contained the following specific counts against the individual defendants: (1) tortious interference with a dead body; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) misrepresentation; (5) violation of G. L. c. 93A; and (6) loss of consortium with respect to Cathleen Macrelli. The plaintiffs sought to hold Children's Hospital liable on a theory of respondeat superior. Although the amended complaint alleged the intentional and negligent infliction of emotional distress with respect to both plaintiffs, by agreement, these counts were submitted to the jury only with respect to Donald Macrelli, and the jury were instructed accordingly.

[4]We acknowledge the amicus briefs submitted by the Office of the Attorney General, the Professional Liability Foundation, and the National Association of Medical Examiners.

knowledge of a death" occurring in any of the nineteen enumerated circumstances must immediately notify the OCME or the medical examiner designated in the location where the death occurred. The variety of circumstances include where criminal violence appears to have taken place, where the death is suspicious or unusual, sudden death where the decedent was in apparent good health, and where children under the age of eighteen[5] years have died from any cause.[6]

General Laws c. 38, § 4, states, in part:

> "Upon notification of a death in the circumstances enumerated in section three, the chief medical examiner or his designee shall carefully inquire into the cause and circumstances of the death. If, as a result of such inquiry, the chief medical examiner or such designee is of the opinion that the death was due to violence or other unnatural means or to natural causes that require further investigation, he shall take jurisdiction . . . .

> "Either the medical examiner or the district attorney in the jurisdiction where the death occurred may order an autopsy. Cases requiring autopsy shall be subject to the jurisdiction of the [OCME] for such purpose. As part of his investigation, the chief medical examiner or his designee may, in his discretion, notwithstanding any other provision of law, cause the body to be tested by the department of public health for the presence of any virus, disease, infection, or syndrome which might pose a public health risk."

General Laws c. 38, § 5, states, in relevant part, that "[a]ll law enforcement officers, district medical examiners, hospitals and other medical facilities . . . shall cooperate with the office of chief medical examiner in the investigation of medicolegal cases." General Laws c. 38, § 13, provides, in pertinent part:

> "After investigation or examination by the [OCME], the

---

[5]Prior to 2000, a person was required to notify the OCME in the event of the death of a child under two years of age. See St. 2000, c. 247, § 2.

[6]Other circumstances include death by accident or unintentional injury; suicide; death following an illegal abortion; death due to poison or acute or chronic use of drugs or alcohol; death in any public or private conveyance; and any person found dead. G. L. c. 38, § 3.

body shall be released to the person with the proper legal authority to receive it, including the surviving spouse, the next of kin, or any friend of the deceased, who shall have priority in the order named. . . ."

*Facts and proceedings.* The plaintiffs' son, David Macrelli, died on September 11, 1996, shortly after receiving a diphtheria, pertussis, and tetanus (DPT) vaccination. The OCME "took jurisdiction" of the body pursuant to G. L. c. 38, §§ 3 and 4. Because of a potential public health risk to other children who received a DPT vaccination from the same lot, the OCME ordered an autopsy at Children's. That hospital was selected because its facilities enabled a more extensive autopsy to be performed than was possible at the medical examiner's office. The chief medical examiner requested that Hannah Kinney, an expert in sudden infant death syndrome at Children's, act as neuropathologist. Two other Children's physicians, Antonio Perez-Atayde and Tina Haliotis, were assigned to the autopsy as general pathologists. Two staff physicians from the OCME, Jennifer Lipman and George Kury, attended the initial portions of the autopsy; they concluded their investigation and left the autopsy room before the body was closed.

Within one week after the child's death, his body was released to the family for burial. The OCME was still awaiting culture results and toxicology work from the autopsy, but issued a temporary death certificate indicating that the cause of death was pending so that the family could bury the child in a timely manner. In January, 1997, four months after the death, the plaintiffs learned for the first time that their son's organs had been retained by the hospital. They requested the organs back, and the organs were returned the next day. On September 9, 1997, one year after the child had died, the OCME issued the final death certificate, identifying the cause of death as "sudden unexplained death in the setting of a recent diphtheria pertussis tetanus vaccination."

Before trial, the plaintiffs moved in limine for a ruling whether G. L. c. 38, § 4, authorizes the OCME to retain organs after an autopsy. At a hearing on the motion, the parties agreed that the OCME was authorized to conduct the autopsy in the first place and that Children's was required by G. L. c. 38, § 5, to cooper-

ate with the OCME; the only issue concerned the authority to retain the organs. The judge concluded that unclear factual issues regarding the normal autopsy process prevented him from ruling in limine, and denied the plaintiffs' motion.

At the conclusion of the trial, the judge, over the plaintiffs' objection, instructed the jury as follows:

> "The medical examiner[7] has authority under the statute to do whatever he . . . reasonably believes is medically necessary to determine the cause of the decedent's death. So the Children's Hospital, which was the designee of the medical examiner, and its doctors had authority under the statute to do whatever the medical examiner was authorized to do, and that is that the Children's Hospital had authority under the statute to do whatever [its physicians] reasonably believed was medically necessary to determine the cause of the decedent's death.
>
> "During argument there was a question about . . . what does that include? Can you do this and do that? The law is the medical examiner can do whatever is reasonably necessary to determine the cause of the decedent's death."

In returning a verdict in favor of the defendants, the jury answered special questions to the effect that none of the defendants had acted negligently or with the intent to inflict emotional distress.[8,9] According to instructions on the special questions form, the jury should have left the remaining questions after the eleventh

---

[7] We understand the judge to refer to the OCME when he discusses the authority of "the medical examiner."

[8] The first special question asked: "Was Dr. Hannah Kinney negligent in her performance of the neuropathology part of the autopsy?" The second special question read: "Did Dr. Hanna [sic] Kinney intend to inflict emotional distress on the plaintiff, Donald Macrelli?" The fourth and fifth special questions asked the same questions with respect to Haliotis; the seventh and eighth special questions repeated these questions with respect to Perez-Atayde; and the tenth and eleventh special questions asked these same questions with respect to Children's.

[9] The jury's responses to the special questions resolved the counts of negligent and intentional infliction of emotional distress, tortious interference with a dead body, and loss of consortium in favor of the defendants. The misrepresentation and G. L. c. 93A claims were resolved by agreement between the parties. On appeal, the plaintiffs do not allege that any of the defendants intentionally inflicted emotional distress on Donald Macrelli.

special question blank given their "No" answers to the prior questions. However, the judge orally instructed the jury to answer the last special question, no. 15. That question asked whether "Kinney, Haliotis and Perez-Atayde [were] acting as public employees at the time each performed her or his part of the autopsy." The judge informed the jury that that question was a "separate independent question" that was advisory in nature, and that they should answer "Yes" to that question if they found that the OCME had the right to direct and control the manner and means by which the defendants conducted their work, and that the acts complained of, including the retention of organs, were within the scope of the defendants' office and employment. The jury answered "Yes" to that question.

*Discussion.* 1. *Motion in limine and jury instruction.* The plaintiffs argue that the judge erred in denying their pretrial motion in limine that sought a determination that G. L. c. 38, § 4, did not authorize the OCME to retain organs after an autopsy "without the consent of the parents based upon the facts as set forth in this case."[10] They challenge also the judge's instruction to the jury regarding the scope of the OCME's authority, maintaining that G. L. c. 38 gives less authority to OCME than the instruction implied.

The judge correctly denied the motion in limine. The plaintiffs requested a pretrial determination that, as a matter of law, G. L. c. 38 precluded the retention of organs, thereby essentially seeking a judgment of liability in their favor. The judge could not have made such a determination, however, as it involved reaching both legal and factual conclusions. The judge could determine the legal proposition that the statute permitted the OCME to do those acts that were reasonably necessary in conducting medicolegal inquiries. The question then is whether retention of organs was reasonably necessary and appropriate in order to achieve the statutory objectives in this case. That created a question of fact for the jury to decide after hearing the admission of evidence regarding autopsy procedure in general and the specific facts of the case, and the judge properly declined to preempt the jury with respect to the question.

---

[10]As the plaintiffs stated in their motion in limine, the motion was essentially a request that the judge revisit their motion for summary judgment, which had previously been denied.

The judge also properly instructed that the statute permits the chief medical examiner or his or her designee to do anything that is reasonably medically necessary to determine the cause of death. Although the statute does not address organ retention expressly, it permits the OCME to conduct autopsies, and gives the office authority to "carefully inquire into the cause and circumstances of . . . death."[11] G. L. c. 38, § 4. When the Legislature delegates authority to an agency or office to accomplish a particular objective, that delegation confers all powers reasonably necessary and appropriate to carry out that objective. See, e.g., *Greater Boston Real Estate Bd.* v. *Boston*, 397 Mass. 870, 877 (1986).

2. *Sufficiency of the evidence of negligence.* The plaintiffs claim that the defendants should not have retained their son's organs without their consent. This argument challenges both the judge's interpretation of the statute in the jury instruction as well as the jury's determination that the defendants did not act negligently in their performance of the autopsy. We have already addressed the plaintiffs' challenge to the judge's interpretation of the statute. See part 1, *supra.*

To the extent the plaintiffs challenge the jury's verdict on factual grounds, the evidence at trial was sufficient to permit the jury to conclude that the defendants did not act negligently in performing the autopsy. Each of the individual defendants testified that the child's organs were not kept for teaching or research, but to determine the cause of death. There was testimony that because the child died shortly after the DPT vaccination, the organs may have been particularly necessary for investigating the potential public health dangers associated with the vaccine. There was also testimony that the child may have died from sudden infant death syndrome. Haliotis, for instance, testified that it may have been significant that the child's organs were different sizes

[11]Although Massachusetts has long recognized the right of the next of kin to the possession of a corpse "in the same condition it was in when death supervened," *Burney* v. *Children's Hosp.*, 169 Mass. 57, 60 (1897), this right is subordinate to the statutorily granted authority of the chief medical examiner or his or her designee to conduct an autopsy in the circumstances set forth in G. L. c. 38, §§ 3 and 4. See *Gahn* v. *Leary*, 318 Mass. 425, 429 (1945) (consent of deceased's next of kin to autopsy was unnecessary where medical examiner has statutory authority to perform autopsy).

and weights from the norm, and that the pathologists would have been remiss in not retaining organs when the cause of death was still undetermined. This evidence supported the jury's determination that none of the defendants was negligent in conducting the autopsy and retaining the organs.[12]

*Judgment affirmed.*

---

[12]Given our decision, we need not address the question whether the jury, in answering the last special question, were correct that the individual defendants were acting as public employees at the time of the autopsy.