MARILYN LeBLANC & another[1] vs. COMMONWEALTH
& others.[2]

No. 08-P-1449.

Suffolk. March 12, 2009. - October 15, 2009.

Present: CYPHER, MEADE, & RUBIN, JJ.

Further appellate review granted, 455 Mass. 1104 (2009).

*Massachusetts Tort Claims Act. Office of Chief Medical Examiner.*

In a civil action brought pursuant to the Massachusetts Tort Claims Act, G. L. c. 258, § 2, alleging negligence on the part of the defendants, the office of the chief medical examiner and two of its medical examiners, stemming from the provision of an autopsy report, the judge did not err in allowing the defendants' motions to dismiss for failure to state a claim, where the defendants, who had properly discharged their duty to identify and release the remains to the plaintiffs, did not owe the plaintiffs the specific duties that the plaintiffs sought to impose (namely, an initial or continuing duty to issue an autopsy report to the next of kin). [421-424] RUBIN, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on January 22, 2004.

Motions to dismiss were heard by *Robert C. Cosgrove*, J.

*David S. Smith* for the plaintiffs.

*Howard R. Meshnick*, Assistant Attorney General, for the Commonwealth.

CYPHER, J. The plaintiffs' complaint, brought pursuant to the Massachusetts Tort Claims Act (G. L. c. 258, § 2), alleged negligence and recklessness of the defendants, the office of the chief medical examiner (OCME) and two of its medical examiners, stemming from the provision of an autopsy report. The report caused the plaintiffs to believe that bodily remains previously delivered to them by the OCME were not those of their

---

[1]Joseph LeBlanc, Sr.

[2]Alexander Chirkov and Abraham Philip, neither of whom filed a brief in the appeal. In the plaintiffs' brief, they have explicitly waived any arguments challenging the dismissal of their claims against Alexander Chirkov.

son and to suffer severe emotional distress and great expense, as they exhumed the remains and conducted deoxyribonucleic acid (DNA) tests to confirm identity. The plaintiffs now appeal from the judgment entered against them after a judge allowed the defendants' motions to dismiss for failure to state a claim. We conclude that the defendants did not owe a duty to the plaintiffs and that the claims are exempt from the Tort Claims Act by G. L. c. 258, § 10(*b*).

*Background.* Because the case comes to us on review of motions to dismiss, our recitation is limited to the factual allegations of the plaintiffs' complaint (as twice amended) and favorable inferences therefrom, all of which we assume to be true. See *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 625 n.7 (2008).[3] The plaintiffs' son, Joseph LeBlanc, Jr. (Joseph Jr.), died in the crash of a small airplane in Danvers on May 21, 2001, along with the male pilot and a female passenger. Following an autopsy the next day by the defendant doctors Alexander Chirkov and Abraham Philip in the OCME headquarters in Boston, Joseph Jr.'s remains were returned to the plaintiffs and buried in Gloucester on May 26, 2001.

In the course of preparing suit against the estate of the pilot, the plaintiffs obtained a copy of the autopsy report from the OCME, which was received on February 27, 2002. The plaintiffs were shocked to read that Joseph Jr. was characterized as "uncircumcised," knowing that he had been circumcised as a child. Fearful and distressed that at least part of the body returned to them was that of the pilot, and finding that the family of the pilot had cremated his purported remains, the plaintiffs made their concerns known to the OCME through their attorney, but claim they received no response. The plaintiffs had Joseph Jr.'s remains exhumed on June 26, 2002, and examined by a consultant in forensic medicine and pathology. They obtained DNA tests which confirmed that the remains were those of their son.

---

[3]Although the defendants attached some limited materials outside the pleadings to their motions to dismiss, and the plaintiffs did likewise in opposition, none of the parties' papers sought resolution on a summary judgment standard. The motion judge evidently did not rely on these materials (which appear in the record appendix) in his decision on the motions, nor do we, as the motions were not converted to motions for summary judgment. See *Eigerman* v. *Putnam Invs., Inc.*, 450 Mass. 281, 285 n.6 (2007).

Sometime after the DNA tests had been completed, the plaintiffs discovered that the autopsy report had been corrected to state that Joseph Jr. was circumcised.[4] The OCME allegedly corrected the report after the inquiry by the plaintiffs' attorney but before they obtained the judicial exhumation order. Claiming the correction of the report was not made known to them by the OCME before the exhumation, the plaintiffs filed a multicount complaint in the Superior Court on January 22, 2004. As twice amended, the complaint alleged negligence by Drs. Chirkov and Philip in connection with the autopsy report; negligent supervision of those doctors by Dr. Richard Evans, the chief medical examiner; and reckless infliction of emotional distress by Drs. Chirkov and Philip. The gravamen of the plaintiffs' complaint is that had they been notified of the correction of the autopsy report, they would not have sought exhumation and DNA testing, and would have been spared anguish and emotional distress as well as great expense.

A Superior Court judge concluded, inter alia, that the defendants had no legally cognizable duties to the plaintiffs, and allowed the defendants' motions to dismiss. On appeal, where they challenge only the dismissal of the negligence-based claims,[5] the plaintiffs principally argue that the OCME was in breach of the duty to correctly identify the proper remains.

*Discussion.* The duties of the OCME are determined by statute, G. L. c. 38. See generally *Macrelli* v. *Children's Hosp.*, 451 Mass. 690, 691-693 (2008). The jurisdiction of the OCME, as relevant in this case, includes deaths caused by accident or occurring in any private conveyance. G. L. c. 38, §§ 3(2), 3(14), & 4. Upon taking jurisdiction over such a death, the OCME shall transport the body for investigation and possible autopsy. G. L. c. 38, § 4. "After investigation or examination by the [OCME], the body shall be released to the person with the proper legal authority to receive it, including the surviving spouse, the next of kin, or any friend of the deceased, who shall have priority

---

[4]The complaint does not allege whether the erroneous notation arose from clerical mistake or medical oversight, although the parties seem to agree that it was the former. The source of the error does not affect our analysis.

[5]In their brief, the plaintiffs expressly waived their appeal from the dismissal of their claims of reckless infliction of emotional distress.

in the order named." G. L. c. 38, § 13, inserted by St. 1992, c. 368, § 2.

In establishing the functions of the OCME in cases requiring autopsy, the only express duty involving the next of kin appearing in the statute is that of releasing the body to a person with proper legal authority to receive it. It is implicit in that duty that there is a duty to properly identify the body. Accordingly, we consider whether any of the actions allegedly taken by the OCME in the identification and delivery of Joseph Jr.'s body were negligent.

As a result of the violence of the plane crash, Joseph Jr.'s body was in three separate bags. The autopsy report contained a notation that "[t]he penis is present and is uncircumcised." We think it understandable that the plaintiffs, reading this report, and knowing that their son had been circumcised, could have been alarmed by concluding that at least some of the remains delivered to them were not those of their son, and that some of his remains had been cremated with the pilot's remains.[6,7]

The plaintiffs' complaint did not make any detailed allegations regarding how their attorney contacted the OCME, what he reported, or what action of the OCME he specifically may have requested, and there is no allegation that the plaintiffs informed the OCME that they would exhume Joseph Jr.'s remains for DNA testing. The plaintiffs maintain that "no one from the [OCME] notified [them] of the change to . . . the report, and that the notation 'uncircumcised' had been made in error."[8]

In any event, the plaintiffs argue that having issued the autopsy report to them, the OCME should be held to have had a duty to inform them that the error in identification had been corrected, and that all the remains delivered were actually those of Joseph Jr. We first observe that the error in the report did not constitute an error of misidentification. The remains of the individual named by the autopsy report were correctly delivered to the

---

[6]There is no allegation whether the pilot, the only other male occupant of the plane, was circumcised.

[7]The complaint does not indicate whether any examination of the remains was made in the funeral home in Gloucester before burial on May 26, 2001.

[8]The Commonwealth's memorandum in support of its motion to dismiss contended in a footnote that the OCME had notified the plaintiffs' attorney of the error. The Commonwealth conceded, however, that for purposes of its motion to dismiss, the contention was immaterial.

next of kin. The statute does not prescribe or limit the medical examiner's duties with respect to the methods of investigation and examination. Accordingly, the OCME has discretion in the means and methods of determining the identification of a body. There is no allegation of any error in the identification procedure used in this case. We conclude the OCME properly discharged its duty to identify and release Joseph Jr.'s remains to the plaintiffs. ·

Moreover, nothing in G. L. c. 38 requires the OCME to notify the next of kin of autopsy results. General Laws c. 38, § 2, as amended by St. 1995, c. 38, § 56, declares that autopsy reports "shall not be deemed to be public records," and authorizes the chief medical examiner to promulgate rules for their disclosure to "those who are legally entitled to receive them." Pursuant to 505 Code Mass. Regs. § 1.03 (2001), upon written request, and receipt of an affidavit verifying relationship to the decedent, the OCME "may, in its discretion, provide a copy of the autopsy report . . . to the decedent's surviving spouse or next of kin." We discern nothing in the statute or the regulations that creates any initial or continuing duty of the OCME in issuing an autopsy report to the next of kin.

We conclude that the OCME did not owe the plaintiffs the specific duties they ask to be imposed.[9] We also think that the specific duties of the medical examiners with respect to the handling of the autopsy report fell within the "exercise or per-formance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved [was] abused." G. L. c. 258, § 10(*b*), inserted by St. 1978, c. 512, § 15. Claims based on such functions or duties are exempted from liability.[10] See *Sena* v. *Commonwealth*, 417 Mass. 250, 255 (1994); *Cady*

---

[9]In *Gahn* v. *Leary*, 318 Mass. 425, 429 (1945), the court referred to an autopsy by a medical examiner as involving "paramount public interests." It appears that the general duties of a medical examiner are owed to the public at large and not to specific individuals. Cf. *Dinsky* v. *Framingham*, 386 Mass. 801, 805-810 (1982).

[10]Further indication that the Legislature intended to exempt the OCME from claims arising from the release of autopsy reports may be found in the language of G. L. c. 38, § 2, as amended through St. 2000, c. 171:

"The chief medical examiner, with approval of the secretary of the

v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 215 (1983).[11]

> *Judgment affirmed.*

RUBIN, J. (dissenting). The Commonwealth argues on appeal that the defendants, the office of the chief medical examiner (OCME) and its medical examiners, owed no duty to the plaintiffs, Marilyn and Joseph LeBlanc (the LeBlancs), under the circumstances of this case, to confirm that the remains released to the LeBlancs were, indeed, those of the LeBlancs' son. Because the defendants did have that duty, I respectfully dissent.

As the majority correctly concludes, the OCME has a duty to

> executive office of public safety, shall promulgate rules for the disclosure of autopsy reports, which shall not be deemed to be public records, to those who are legally entitled to receive them. If a medical examiner conducts an autopsy on a body of a deceased person who within six months before the date of death received services from a facility or program operated, contracted for, or licensed by the department of mental health, the office of the chief medical examiner shall provide a copy of the autopsy report, upon request, to the commissioner of mental health for the purpose of completing an investigation into the circumstances surrounding the death, if a next of kin does not object thereto. The chief medical examiner, with the approval of said secretary, may establish fees for providing autopsy reports to those who are legally entitled to receive them. *Neither the chief medical examiner, nor any employee of the office of the chief medical examiner, shall be subject to civil or criminal liability for lawfully disclosing an autopsy report or any part thereof, pursuant to the rules concerning the disclosure of autopsy reports promulgated under this section, to anyone legally entitled to receive it*" (emphasis added).

[11]We briefly mention other issues. While the plaintiffs waive their claims against Dr. Chirkov, they do not waive their negligence claims against Dr. Philip, stating there is a question whether he was an independent contractor. The judge did not reach this issue. However, medical examiners long have been considered "state officers." See Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 46-47 (1948). Compare *Kelley* v. *Rossi*, 395 Mass. 659, 661 (1985).

The parties have referred to several cases from other jurisdictions, which we decline to consider because they are not helpful in interpreting our statute. See generally 18 Am. Jur. 2d Coroners or Medical Examiners (2004); 18 C.J.S. Coroners and Medical Examiners (2007); Annot., Civil Liability in Conjunction With Autopsy, 97 A.L.R.5th 419, 434-435 (2002).

properly identify a body over which it takes jurisdiction, and thus control, see G. L. c. 38, § 4, and a duty, after investigation or examination, to release the body to the person with the proper legal authority to receive it. See *ante* at 421-422; G. L. c. 38, § 13. These duties necessarily include a subsidiary duty to inform the person authorized to receive the body, here the next of kin, Joseph LeBlanc, Jr.'s parents, the LeBlancs, that the OCME has released to them the correct body.[1] These duties do not cease the moment the OCME releases a body. When the OCME receives information that reasonably calls into doubt its initial identification — something one hopes would happen very rarely — it must investigate, as it properly did here, in order to fulfill its duty to identify the body. By the same token, at least where the OCME knows that the person authorized to receive the body is aware of the information calling the identification into doubt, in order to fulfill its duty to that person, it must inform him or her of the conclusion it has reached as a result of its investigation about the identity of the body.

In this case, the OCME released to the LeBlancs remains that the medical examiners had identified as those of Joseph LeBlanc, Jr. After burying the remains, the LeBlancs, as part of a suit against the estate of the pilot for causing the plane crash that killed their son, requested and lawfully received a copy of the OCME's official autopsy report. The report relates that the body, which was initially received by the OCME as an "unknown," was in three bags: one containing the upper torso, the second containing the lower torso, and the third containing fragments of body parts commingled with aircraft parts. Identification was made by use of dental information. No information is reported on the physical characteristics of the body that might be relevant to its identification except the notation relating to circumcision. That autopsy report thus contained a physical description of the lower torso released to the LeBlancs, and buried by them, that was inconsistent with it being part of their son's body, stating that the person whose lower torso was released to the LeBlancs was uncircumcised. As the majority states, it is "understandable

---

[1]As relevant here, the "person with the proper legal authority to receive [the body] includ[es] . . . the next of kin." G. L. c. 38, § 13, inserted by St. 1992, c. 368, § 2.

that the plaintiffs, reading this report, and knowing that their son had been circumcised, could have been alarmed" by concluding that at least the lower torso delivered to them — and of course buried with the rest of the body in their son's grave — was "not [that] of their son." *Ante* at 422.

According to the complaint, the LeBlancs' attorney "contacted the [OCME] and informed them of the LeBlanc's concerns and the reasons therefor[]," reporting the discrepancy between the description of the remains contained in the autopsy report and the known anatomy of Joseph LeBlanc, Jr.'s body. In other words, the LeBlancs' attorney put the defendants on notice of information that reasonably called into doubt their initial identification of the remains returned to the LeBlancs.[2]

Because the defendants have a duty to identify the remains, their receipt of this information required them to investigate in order to ensure that the remains were identified accurately. Alerted by the LeBlancs' attorney to the doubt that reasonably existed in light of the autopsy report, the defendants recognized this duty. The defendants appropriately acted upon counsel's communication: they investigated the matter, determined that the autopsy report contained an error and that the identification of the remains as those of the LeBlancs' son was accurate, and, on or before April 3, 2002, see note 2, *supra*, corrected the autopsy report.

Once the defendants investigated the matter and determined that their initial identification was accurate, they could have fulfilled their duty to the LeBlancs by informing the LeBlancs that after investigation they had concluded that the remains released to the LeBlancs were indeed those of Joseph LeBlanc, Jr. This is what the defendants failed to do. While the defend-

---

[2]Although it is not part of the record we review on this motion to dismiss, the deposition testimony of the medical examiner who performed the autopsy, Dr. Abraham Philip, indicates that the OCME's chief medical examiner in fact received the LeBlancs' complaint and understood the issue raised by the autopsy report and communicated to the OCME by the LeBlancs' attorney. Dr. Philip stated that the chief medical examiner, Dr. Richard J. Evans, told him that there had been a "complaint received" or there were "some issues with [the] autopsy report and the issue was about circumcised, uncircumcised." Dr. Evans had checked the report and Dr. Philip's autopsy notes and asked that Dr. Philip correct the report and write an affidavit. That affidavit was written on April 3, 2002, and the autopsy report was changed by crossing out "un" before "circumcised," with the change initialed by Dr. Philip.

ants understood the problem, and resolved it to their own satisfaction, the complaint alleges that they failed to inform the LeBlancs. As the motion judge stated, the complaint alleges that the "OCME never responded to the LeBlancs' inquiries." It is the defendants' failure to inform the LeBlancs that breached the duty owed them.[3]

The majority attempts to avoid this conclusion by disaggregating the OCME's legal responsibilities. The majority concludes that the OCME has met its obligations so long as it has identified a body internally within the OCME and has subsequently released that body to the person authorized to receive it. *Ante* at 422-423. This analysis is wrong. The OCME could not meet its obligations, in the first instance, by releasing to parents a body in a manner that reasonably left them in doubt as to its identity, even if it happened to be the right one. Likewise, the OCME cannot fulfill its duty upon learning that there is a reasonable basis, of which those parents are aware, for doubt as to its initial identification unless it informs the parents that after investigation it has, indeed, concluded that it delivered the remains of their son.

The majority also states that "nothing in the statute or the regulations . . . creates any initial or continuing duty of the OCME in issuing an autopsy report to the next of kin." *Ante* at 423. The question here, however, is not whether the OCME has a duty to the next of kin to issue an accurate autopsy report. The duty at issue here is the duty to identify the body the OCME releases to the next of kin and to inform them of that identification. The facts alleged in the complaint are sufficient to allege a breach of that duty. I therefore respectfully dissent.[4]

The majority adverts to several issues that are not raised in

---

[3]While again we do not consider discovery materials in reviewing the allowance of the motion to dismiss, there is no evidence before us that the LeBlancs' attorney was notified of the correction to the autopsy report, nor does the Commonwealth purport to rely on any. Cf. *ante* at 422 n.8.

[4]The majority finds no duty here. *Ante* at 423. Its opinion also contains broad dictum asserting that "the specific duties of the medical examiners with respect to the handling of the autopsy report" fall within the discretionary functions exception of G. L. c. 258, § 10(*b*). *Ibid.* As explained in the text, the duty allegedly breached here is not a duty to prepare an accurate autopsy report, nor is it a duty to correct an inaccurate autopsy report. If the majority means that § 10(*b*) provides the OCME with immunity from liability for

this appeal, including the adequacy of the notice provided by the LeBlancs to the defendants and the foreseeability of the LeBlancs' exhumation and forensic testing of the remains.[5] I would leave these to be addressed in subsequent proceedings on remand below should the defendants choose to raise them.

---

the breach of its "specific duties" to identify and release bodies, see *ante* at 420 (asserting that the LeBlancs' "claims are exempt from the Tort Claims Act by G. L. c. 258, § 10[*b*]"), its conclusion is without support. Such a rule would, among other things, immunize any OCME failure to identify a body or to release it to the person authorized to receive it as provided for by the statute. These functions are not discretionary. See G. L. c. 38, § 13. Cf. *Sena v. Commonwealth*, 417 Mass. 250, 255-259 (1994). And indeed, the Supreme Judicial Court's recent decision in *Macrelli* v. *Children's Hosp.*, 451 Mass. 690, 695-697 (2008), indicates that parents do have a cause of action for breach of duties owed them under the statute, there the alleged negligent failure to return the organs of a child after an autopsy where retention was not reasonably necessary to determine the cause of death, but the organs were instead kept for purposes of teaching or research.

[5]For example, the majority asserts that the LeBlancs did not inform the defendants that if the OCME did not respond, the LeBlancs would undertake an exhumation and forensic testing. This goes to the foreseeability of the costs incurred by the LeBlancs.