Curtin, J.
Plaintiff Wells Fargo Bank National Association (‘Wells Fargo”) commenced this action to recover, as the secured party, payment on its debtor’s accounts receivable owed by defendant Kal-Rich, Inc. (“Kal-Rich”), and guaranteed by defendants and Kal-Rich principal owners, Nicholas G. Kalergis, Jr. (“Kalergis”) and Peter E. Richards (“Richards”). The trial court allowed the defendants’ Mass. R. Civ. P., Rule 12(b) (6), motion to dismiss the action, and Wells Fargo filed this appeal.
Wells Fargo’s four-count complaint sought recovery against Kal-Rich for breach of contract and in quantum meruit, and against Kalergis and Richards for breach of contract and breach of guaranty. The complaint alleged that (1) Kal-Rich entered into a written contract with Riverside Millwork Company, Inc. (“Riverside”), a New *104 Hampshire corporation, for Riverside to supply Kal-Rich with building materials and supplies; (2) Kalergis and Richards executed personal guaranties of payment of the amounts due by Kal-Rich; (3) Wells Fargo held a “first priority security interest in substantially all of the assets” of Riverside; (4) in a sale by a junior secured lienholder, New England Millwork & Kitchens, LLC (“NEMK”) purchased the assets of Riverside; (5) Wells Fargo maintained a “first priority secured position over substantially all of the assets” of NEMK; (6) Riverside and NEMK provided Kal-Rich with building materials and supplies; (7) NEMK defaulted on its obligations to Wells Fargo; (8) Wells Fargo demanded payment from the defendants for building materials and supplies on April 18, 2008; and (9) the defendants refused to pay.
On May 28, 2008, the defendants filed their Rule 12(b) (6) motion to dismiss the complaint on the ground that Wells Fargo’s failure to allege privity of contract between itself and the defendants was fatal to its contract and quantum meruit claims. In opposition to the dismissal motion, Wells Fargo argued that the defendants continue to owe Riverside money for building materials and supplies, and as the secured creditor with a first priority security interest in the assets of both Riverside and NEMK, Wells Fargo is entitled under the Uniform Commercial Code (“UCC”) to foreclose upon its security interests and maintain this action against the defendants.[2] After hearing, the trial court allowed the defendants’ motion and entered a judgment of dismissal on June 2, 2008. The court noted in the margin of the dismissal motion that Wells Fargo agreed that Kal-Rich had obtained credit from Riverside in 2000, but that Wells Fargo had taken a security interest in Riverside in 2007; and that as Wells Fargo did not assert a contract with Kal-Rich, Wells Fargo’s enforcement of a subsequent security interest did not entitle it to bring a contract claim against the defendants. Wells Fargo filed two motions for reconsideration. The *105 first, submitted on June 6, 2008, was denied by the trial court on June 26, 2008; the second “supplemental” motion was filed on June 30, 2008, opposed by the defendants, and denied by the trial court on August 25, 2008.
1. On June 2, 2008, when the trial court in this case allowed the defendants’ motion, the Rule 12(b)(6) standard required the denial of a dismissal motion if “accept[ing] as true the allegations of the complaint as well as any inferences reasonably drawn therefrom in the plaintiffs favor,” Karty v. Mid-America Energy, Inc., 74 Mass. App. Ct. 25, 26 (2009), “it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). On June 13, 2008, in Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008), the Supreme Judicial Court adopted a more stringent standard for complaints under Rule 12(b) (6). To survive a dismissal motion, a complaint must now set forth factual allegations sufficient “to raise a right to relief above the speculative level ... [based] on the assumption that all the allegations in the complaint are true.” Id. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
The Iannacchino standard was not applied by the trial court in this case. The motion judge, ruling 11 days before the issuance of Iannacchino, obviously had only the former Nader standard to utilize in his consideration and allowance of the defendants’ Rule 12(b)(6) motion. Nor is there anything in the record to suggest that either party brought the Iannacchino change in the law to the attention of the trial court in its subsequent dispositions of Wells Fargo’s reconsideration motions. Appellate review, however, of the allowance of a Rule 12 (b) (6) dismissal motion is de novo, Curtis v. Herb Chambers I-95, Inc., 75 Mass. App. Ct. 662, 666 (2009); and the sufficiency of Wells Fargo’s complaint must be considered on this appeal on the basis of the now governing Iannacchino standard for Rule 12(b) (6) dismissals.
Utilizing the Iannacchino Rule 12(b)(6) standard, we conclude that the defendants’ motion to dismiss should have been denied.
2. Part 6 of Article 9 of the UCC addresses the rights of parties after default by a debtor subject to a security interest. Section 9-607(a) (3) of G.L. c. 106 provides:
If so agreed, and in any event after default, a secured party ... may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral.
The official comment to §9-607 states that the statute “explicitly provides for the secured party’s enforcement of the debtor’s rights in respect of the account debtor’s ... obligations.” G.L.c. 106, §9-607 comment 3.
The relevant terms, as used in Article 9, are defined in G.L.c. 106, §9-102(a). “Account” is a “right to payment of a monetary obligation ... for property that has been or is to be sold.” G.L.c. 106, §9-102 (a) (2). “Collateral” is defined as “property subject to a security interest,” including “accounts.” G.L.c. 106, §9-102 (a) (12) (B). A “secured party” is “a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding.” G.L.c. 106, §9-102(a) (72) (A). A “debtor” is defined as “a person having *106 an interest, other than a security interest or other lien, in the collateral, whether or not the person is an obligor.” G.L.c. 106, §9-102(a) (28) (A). An “account debtor” is “a person obligated on an account.” G.L.C. 106, §9-102 (a) (3). Finally, commentators have written that “other person [s] obligated on collateral” under §9-607(a) include guarantors. See Donald J. Rapson, Default and Enforcement of Security Interests under Revised Article 9,74 Chi.-Kent L. Rev. 893,898 (1999); Barkley Scott, Revised Article 9 of the UCC: Scope, Perfection, Priorities, and Default, 4 N.C. Banking Inst. 129,167 (2000).
In this case, accepting the factual allegations of the complaint as true for Rule 12(b) (6) purposes, Wells Fargo is the secured party, NEMK is the debtor, and Kal-Rich is the account debtor. The monetary obligation owed by Kal-Rich to Riverside, which was assigned to NEMK, is an account, and that account or account receivable is collateral. Kalergis and Richards are guarantors. Under G.L.c. 106, §9-607(a) (3), Wells Fargo, as a secured party whose debtor (NEMK) was in default, had the right to enforce its security interest in NEMK’s accounts receivable against Kal-Rich, the account debtor, as well as Kalergis and Richards, the guarantors. See Mooney v. University of Md., 178 Md. App. 637 (2008), rev'd on other grounds, 407 Md. 390 (2009) (“Once the debtor defaults, § 9-607(a) (3) provides that the secured party may enforce the obligation of an account debtor and exercise the rights of the debtor with respect to that obligation.”). See generally Timothy R. Zinnecker, The Default Provisions of Revised Article 9 of the Uniform Commercial Code: Part I, 54 Bus. Law. 1113, 1131 (1999). NEMK’s rights against the defendants were in contract. Wells Fargo, entitled to “exercise the rights” of NEMK under §9-607 (a) (3), could proceed for breach of contract and breach of guaranty against the defendants in this action without any allegation or proof of privity of contract.[3] As its security interest in NEMK’s accounts receivable existed at the time it commenced this suit, Wells Fargo could proceed against the defendants as NEMK’s account debtors for unpaid obligations that arose prior to Wells Fargo’s interest.
The judgment of dismissal is vacated, the allowance of the defendants’ Rule 12(b) (6) motion to dismiss is reversed, and the action is returned to the trial court for further proceedings.
So ordered.

 Wells Fargo attached to its opposition an affidavit by its assistant vice president, Jonathan Miller (“Miller”). Miller averred to the facts stated in the complaint. lie also attached exhibits to his affidavit, including the contract between Kal-Rich and Riverside, personal guaranties to Riverside by Kalergis and Richards, Wells Fargo’s credit and security agreements with Riverside and NEMK, Wells Fargo’s “assumption agreement” with NEMK, and the UCC financing statements it had filed against Riverside’s and NEMK’s accounts. While the defendants did not object to Miller’s affidavit, they did not request additional time to submit materials in response to the affidavit. Neither party requested that the defendants’ Rule 12 (b) (6) motion be treated as one for summary judgment, and the motion judge did not announce that he was so treating the dismissal motion. See Gomes v. Metropolitan Prop. & Cas. Ins. Co., 45 Mass. App. Ct. 27, 32 (1998). Nothing in the court’s notations suggests that the motion judge considered anything beyond the complaint in making his ruling. Neither party has raised on this appeal any issue of the conversion of the defendants’ motion to one pursuant to Mass. R. Civ. R, Rule 56; and both have argued Wells Fargo’s appeal as one involving only the alleged insufficiency and dismissal of the complaint. Therefore, we conclude that Wells Fargo’s filing of the Miller affidavit and exhibits did not convert the defendants’ dismissal motion to one for summary judgment. See Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007); LeBlanc v. Commonwealth, 75 Mass. App. Ct. 419, 420 n.3 (2009).

 To illustrate the effect of §9-607 (a) (3), the following example is provided in The Default Provisions of Revised Article 9 of the Uniform Commercial Code: Part I, supra: “Bank has a security interest in Retailer’s accounts. Retailer sells a unit of inventory to Buyer on credit, creating an account. Retailer defaults on its obligations to Bank. Bank may notify Buyer to make payment directly to Bank. Bank may also exercise any of Retailer’s contractual and other rights against Buyer if Buyer fails to honor its payment obligation.”